IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARRELL HARRIS,<br>  Plaintiff,<br><br>  v.<br><br>VITRAN EXPRESS, INC., VITRAN<br>EXPRESS CANADA, INC., VITRAN<br>CORPORATION, INC., DATA<br>PROCESSING, LLC, HR-1 CORPORATION<br>and CT TRANSPORT, INC. a/k/a CENTRAL<br>TRANSPORT, INC.,<br>  Defendants. | Civil Action No. 14-0704<br><br>United States District Judge<br>Arthur J. Schwab<br><br>United States Magistrate Judge<br>Cynthia Reed Eddy |

**REPORT AND RECOMMENDATION**

**I.   Recommendation**

After careful consideration of several Defendants' Motion to Dismiss or Stay Actions (ECF No. 12) and Plaintiff's response, and the briefs in support and opposition to *Colorado River* abstention or stay, *Colorado River* does not require or permit the Court to abstain or stay proceedings pending the resolution of the state court proceedings. I respectfully recommend, therefore, that the motion be denied.

**II.   Report**

**A. Background**

On May 30, 2014, Plaintiff Darrell Harris filed a complaint against Vitran Express, Inc., Vitran Express Canada, Inc., Vitran Corporation, Inc., Data Processing, LLC, HR-1 Corporation and CT Transport, Inc. a/k/a Central Transport, Inc., stating claims for breach of contract (Count I), violation of the Pennsylvania Wage Payment and Collection Law, 43 Pa.C.S. § 260.1, *et seq.* (Count II), and for unlawful employment practices prohibited by Title VII of the Civil Rights Act

of 1964, as amended, 42 U.S.C. Sec. 2000e-1 *et seq.,* and 42 U.S.C. § 1981. (Count III). Complaint (ECF No. 1). Vitran Express ("Express") is a Pennsylvania corporation; Vitran Express Canada ("Express Canada") and Vitran Corporation, Inc. ("Vitran") are Ontario, Canada corporations; Data Processing, LLC ("Data"), HR-1 Corporation ("HR-1") and CT Transport, Inc. ("CT Transport ") are Michigan corporations. Plaintiff asserts federal question jurisdiction over his civil rights claims, and supplemental jurisdiction over his Pennsylvania claims. 28 U.S.C. §§ 1331 and 1367(a), respectively.

Mr. Harris is African-American. From his complaint, Plaintiff and five of his executive-level colleagues at FedEx were hired by Express in August 2012, and he signed an employment agreement and a retention agreement with Express which provided, *inter alia*, terms of employment and compensation in the event of severance. Complaint (ECF No. 1), at ¶¶ 11-22. The basis of Plaintiff's claims is his termination from employment on October 17, 2013, by the owner of Data, which had acquired the assets and obligations of Express on September 23, 2013. *Id*., at ¶¶ 23-27. The other five executives hired from FedEx at the same time he was hired, all white, were not terminated. *Id*., at ¶¶ 28-29.

Express, Data, HR-1 and CT Transport filed a Motion to Dismiss or Stay Actions (ECF No. 12) in which they aver that on November 14, 2013, Vitran had initiated parallel proceedings in the Court of Common Pleas of Butler County, an action under the Pennsylvania Declaratory Judgment Act, 42 Pa.C.S. § 7531 *et seq.,* against Mr. Harris, approximately six months before Plaintiff filed this federal action, and that this Court should dismiss or stay the proceedings pursuant to the *Colorado River* abstention doctrine. *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800 (1976).[1] Harris failed to timely respond to Vitran's Complaint on or

---

[1] Defendants Express Canada and Vitran, the Canadian corporations, were defaulted on September 11, 2014 on Plaintiff's motion for default (ECF No. 17), for failure to answer or otherwise timely respond. These Defendants

before January 3, 2014 and Vitran served upon Harris a Notice of Intention to Take Default Judgment Pursuant to Pa.R.C.P. No 237.

On February 14, 2014, Harris filed Preliminary Objections to Vitran's Complaint contending that Vitran's Complaint was legally insufficient (demurrer) and that venue should be transferred to Allegheny County, Pennsylvania. In response, on April 7, 2014, Vitran filed Preliminary Objections to Harris' Preliminary Objections asserting: (i) that Harris' Preliminary Objections were legally insufficient (demurrer) and that venue in Butler County was proper because it was the county of Harris' residence at the time the action was initiated and he was served; (ii) that Harris inappropriately averred scandalous and impertinent facts in his Preliminary Objections; and (iii) that Harris failed to verify the averments in his pleadings.

On April 17, 2014, the Honorable S. Michael Yeager held oral argument on the parties' respective preliminary objections and on April 21, 2014, entered an order overruling Harris' Preliminary Objections, sustaining Vitran's Preliminary Objections, and directing Harris to file an answer. On July 25, 2014, Vitran served upon Harris and his Counsel a second Notice of Intention to Take Default Judgment Pursuant to Pa.R.C.P. No. 237, and by letter dated August 5, 2014, Vitran noticed Harris of its intent to file a motion to compel his outstanding responses to Vitran's discovery requests in the Butler County Action, which motion was filed on August 15, 2014 and was scheduled to be presented in the Butler County Action on August 21, 2014.

Subsequently Plaintiff's Counsel committed to providing responses to Vitran's discovery requests before the August 21, 2014 presentation of Vitran's Motion to Compel, and on August 18, 2014, Harris filed his Answer, New Matter and Counterclaims, which raised the same three claims made in the federal complaint as counterclaims to the state complaint.

---

filed a Motion to Set Aside Default Under Federal Rule of Civil Procedure 55(C) (ECF No. 22). On October 13, 2014, these Defendants and Mr. Harris filed a Joint Motion to Vacate the Clerk's Entry of Default (ECF No. 28), resolving their disagreement about proper service. The Court will grant that Joint Motion by text-only order.

## B. *Colorado River* Analysis

The *Colorado River* abstention doctrine is to be narrowly applied in light of the general principle that "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996); *see also Colorado River*, 424 U.S. at 813 ("Abstention from the exercise of federal jurisdiction is the exception, not the rule. The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.") (citation and internal quotation omitted). When a court clearly has subject matter jurisdiction over a cause of action, "abstention rarely should be invoked, because federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.' " *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) (quoting *Colorado River*, 424 U.S. at 817).

Whether abstention is appropriate is a two-part inquiry. The initial question is whether there is a parallel state proceeding that raises "substantially identical claims [and] nearly identical allegations and issues." *Yang v. Tsui*, 416 F.3d 199, 204 n. 5 (3d Cir. 2005) (internal quotation and citation omitted). "Parallel cases *involve the same parties* and substantially identical claims, raising nearly identical allegations and issues." *Id*.

If the proceedings are parallel, courts then look to a multi-factor test to determine whether "extraordinary circumstances" meriting abstention are present. *Spring City Corp. v. American Bldgs. Co.*, 193 F.3d 165, 171 (3d Cir. 1999). The United States Court of Appeals for the Third Circuit enumerated this "multi-factor" analysis in *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 308 (3d Cir. 2009) as follows:

> In determining whether an action presents "extraordinary circumstances" we consider six factors: "(1) [in an in rem case,] which court

> first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties." *Spring City*, 193 F.3d at 171. "No one factor is determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. 1236. The balancing of factors is "heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

571 F.3d at 308.

Given the rarity with which federal courts decline to exercise their jurisdiction because of the existence of parallel proceedings in state court, it is no surprise to find this case does not present "extraordinary circumstances" that warrant or permit abstention or stay. To the contrary, the circumstances and procedural postures of the state and federal actions herein present a common and ordinary scenario, and both may proceed simultaneously.

Initially, the state and federal cases are not parallel, given that the only Plaintiff in the Court of Common Pleas of Butler County is Express, and the other five corporate entities, Defendants in this federal action, are not parties to that declaratory judgment action. Mr. Harris' counterclaims in that case, although the same as the claims made in his federal court complaint, are only against Express. Thus there is a *substantial* lack of identity of parties and the state and federal actions are not parallel. *See IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 306 (3d Cir. 2006) (cases are typically "parallel so as to justify abstention under *Colorado River* when they involve the same parties"); *Timoney v. Upper Merion Tp.*, 66 F.App'x 403, 405 (3d Cir. 2003) (citing *Trent v. Dial Med. of Fla., Inc.*, 33 F.3d 217, 223 (3d Cir. 1994) ("Cases are parallel if they involve the same parties and 'substantially identical' claims, raising 'nearly identical allegations and issues'")).

Consideration of the *Colorado River* factors also counsel strongly against abstention or stay of the federal court proceedings. Those factors are addressed *seriatim*.

(1) In an in rem case, which court first assumed jurisdiction over the property. This case is not in rem so this factor is immaterial.

(2) The inconvenience of the federal forum. If anything, the federal forum in Pittsburgh, Pennsylvania is more convenient for the parties and counsel. Express is a Pennsylvania corporation located in Gibsonia, Pennsylvania, Complaint (ECF No. 1), at ¶ 4, which is in Allegheny County. Butler County was chosen as an appropriate venue in which to file the state declaratory judgment action only because Plaintiff was, at that time, residing in that county, and there is no suggestion that Butler County was the locus of any of the conduct for which Defendants are being sued. Defendants' Reply in Support of Motion to Dismiss or Stay Action (ECF No. 25), at 4. The major airport in the Western District of Pennsylvania is located in Allegheny County, much closer to the federal courthouse than to the courthouse in Butler County. This factor militates against abstention.

(3) Desirability of avoiding piecemeal litigation. Every *Colorado River* scenario presents a likelihood for some piecemeal litigation. However, it is not the "mere possibility of piecemeal litigation [that] justifies *Colorado River* abstention; rather, there must be a strongly articulated *congressional policy against piecemeal litigation* in the specific context of the case under review." *Ryan v. Johnson*, 115 F.3d 193, 198 (3d Cir. 1997) (emphasis added) (citing *Colorado River*, 424 U.S. at 819 ("The clear federal policy evinced by [the McCarran Amendment] is the avoidance of piecemeal adjudication of water rights in a river system.")). *See also McMurray v. De Vink*, 27 F.App'x 88, 92-93 (3d Cir. 2002) ("The presence of garden-variety state law issues has not, in this circuit, been considered sufficient evidence of a congressional policy to

consolidate [overlapping] lawsuits for unified resolution in the state courts.") (quoting *Ryan*, 115 F.3d at 198). Defendants are unable to point to *any* congressional policy, let alone a *strongly articulated* one, evincing Congress' desire to avoid piecemeal litigation of title VII claims. This factor militates against abstention. *See, e.g., Woodford v. Comm. Action Agency of Greene County, Inc.*, 239 F.3d 517 (2nd Cir. 2001) (district court's invocation of *Colorado River* abstention was erroneous: "The pendency of these [federal Title VII and ADEA] actions to enforce federal laws against employment discrimination concurrently with state actions to recover for common-law torts . . . does not present the exceptional circumstances required for *Colorado River* abstention"); *Kuhn v. Oehme Carrier Corp.,* 255 F.Supp.2d 458 (E.D.Pa. 2003) (*Colorado River* abstention not appropriate to stay federal Title VII claims pending state court action raising related Pennsylvania statutory and common law claims arising from Plaintiff's termination); *EEOC v. Creative Playthings, Ltd*., 375 F.Supp.2d 427 (E.D. Pa. 2005) (in EEOC federal lawsuit pursuant to Title VII, *Colorado River* abstention is not appropriate to stay complainant's defamation and libel claims brought in Pennsylvania court arising from his termination).

(4) The order in which jurisdiction was obtained. Although the state court declaratory judgment action was filed about six months earlier than the federal action, and although a number of minor preliminary matters have taken place in the state court, that case is not substantially further along than this case. In fact, Mr. Harris' answer, new matter and counterclaim in the state case was only filed on August 18, 2014, and as of that date, discovery had not yet been exchanged. Defendants' Reply in Support of Motion to Dismiss or Stay Action (ECF No. 25), at ¶¶ 13-14. To the extent some discovery may have been provided or exchanged

since that date, it will presumably be discoverable and useful in the federal case as well. This factor militates against abstention.

(5) Whether federal or state law controls. Pennsylvania law controls the state common law and statutory claims; federal law controls the federal civil rights claim. This Court has supplemental jurisdiction over and is capable of deciding the Pennsylvania claims applying Pennsylvania law, 28 U.S.C. § 1367(a); s*ee De Asencio v. Tyson Foods, Inc*., 342 F.3d 301, 308 (3d Cir. 2003), and the state court has concurrent jurisdiction over and is capable of deciding the federal counterclaim applying federal law. *See Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820 (1990) (state courts have concurrent jurisdiction over Title VII actions); *Bangura v. Elwyn, Inc*., 500 Fed.Appx. 113, 115 n.3 (3d Cir. 2012) (same). This factor is therefore a draw.

(6) Whether the state court will adequately protect the interests of the parties. In *Ryan*, the Court stated that "the mere fact that the state forum is adequate does not counsel in favor of abstention, given the heavy presumption the Supreme Court has enunciated in favor of exercising federal jurisdiction. Instead, this factor is normally relevant when the state forum is *in* adequate. . . . When the state court is adequate [as presumed here], the factor carries little weight." 115 F.3d at 200 (emphasis in original). This factor is at best a draw.

Three of the six factors tilt the *Colorado River* analysis strongly in favor of denying the motion to abstain or stay the case pending the state court action, and the other three factors are neutral at best. This case is not one of exceptional circumstances that might justify this Court abstaining from its responsibility under the United States Constitution to hear cases and controversies over which it has jurisdiction. Accordingly, the case should not be stayed or dismissed under the *Colorado River* doctrine.

Defendants, in a footnote in their Brief in Support, posit a "separate and independent basis for dismissing the statutory race claims . . . [because] neither of those entities were Harris' employer and neither were a named respondent in any Charge of Discrimination filed by Harris. See Exhibit H at Vitran's Motion." Brief in Support of Motion to Dismiss (ECF No. 13), at 5, n.4. "As a result of Harris' failure to name these Defendants in any Charge of Discrimination, Harris has failed to state a claim against these Defendants as a matter of law. . . . As such, Defendants respectfully request dismissal of the same." *Id*. (citations omitted). *See Hills v. Bor. of Colwyn*, 978 F.Supp.2d 469, 478 (E.D.Pa. 2013) ("Before filing suit under the PHRA, a plaintiff must first exhaust all administrative remedies by filing a charge of discrimination (also referred to as an administrative complaint) with the Pennsylvania Human Relations Commission ('PHRC') or EEOC.").

As Plaintiff argues in response, the general rule of exhaustion is subject to a firmly established exception. Because the "jurisdictional requirements for bringing suit under Title VII should be liberally construed," the Court of Appeals for the Third Circuit directs the district courts to excuse the failure to name a party in the administrative charge when a party unnamed in the EEOC complaint (1) received notice of the EEOC complaint, and (2) there is a shared commonality of interest between the named and unnamed parties. *Glus v. G.C. Murphy Co.*, 629 F.2d 248, 251 (3d Cir. 1980), *cert. granted*, judgment vacated on other grounds *sub nom, Retail, Wholesale & Dep't Store Union, AFL-CIO v. G.C Murphy Co.*, 451 U.S. 935 (1981); *Schafer v. Bd. of Pub. Educ.*, 903 F.2d 243, 251 (3d Cir. 1990).

Failure to name a party in the EEOC complaint will not necessarily doom the related lawsuit. Instead, such failure may be excused if, after consideration of a number of factors,[2] the

---

[2] The *Glus* factors are: (1) whether the role of the unnamed party could be ascertained at the time of the filing of the EEOC complaint through reasonable effort by the complainant; (2) whether, under the circumstances, the interests

district court determines that it would be appropriate in light of the statutory purposes of Title VII and the interests of both parties to the lawsuit. *Glus*, 629 F.2d at 251. The *Glus* analysis is not to be mechanically applied, and no single factor is decisive. *Id*. *See also Jankowski v. Fanelli Bros. Trucking Co*., 2014 WL 1612600, *5-*6 (M.D.Pa. 2014) (collecting cases).

Obviously, the *Glus* determination is fact intensive, and it would be premature to address the exhaustion issue at this early stage of the proceedings. By relegating the issue to a footnote, Defendants seem to recognize the futility of their failure to exhaust argument for dismissal at this juncture.

**III.    Conclusion**

For the foregoing reasons, this Court respectfully recommends that the District Judge deny the Motion to Dismiss or Stay Actions (ECF No. 12).

---

of a named party are so similar to the unnamed party that, for purposes of obtaining voluntary conciliation and compliance, it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether the unnamed party sustained any prejudice from its absence from the EEOC proceedings; and (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is through the named party. *Glus*, 629 F.2d at 251.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, the parties are allowed fourteen (14) days from the filing of this Report and Recommendation to file Objections. Any party opposing the objections shall have fourteen (14) days after date of service to respond to the objections. Failure to file Objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Date: October 15, 2014

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all counsel of record