IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARRELL HARRIS, ) | |
|     Plaintiff, ) | |
| ) | Civil Action No. 14-0704 |
| ) | |
| v. ) | |
| VITRAN EXPRESS, INC., VITRAN ) | United States Magistrate Judge |
| EXPRESS CANADA, INC., VITRAN ) | Cynthia Reed Eddy |
| CORPORATION, INC., DATA ) | |
| PROCESSING, LLC, HR-1 CORPORATION ) | |
| and CT TRANSPORT, INC. a/k/a CENTRAL ) | |
| TRANSPORT, INC., ) | |
|     Defendants. ) | |

## **MEMORANDUM OPINION**[1]

CYNTHIA REED EDDY, United States Magistrate Judge.

### I.    INTRODUCTION

Presently before the Court is Defendants Data Processing, LLC ("Data"), HR-1 Corporation ("HR-1") and CT or Central Transportation, Inc.'s ("CT Transport") motion for partial summary judgment [ECF No. 65].[2] The motion is fully briefed and ripe for disposition. [*See* ECF Nos. 66, 67, 68, 71, 72, 73, 74]. For the reasons that follow, Defendants' motion is granted.

---

[1]    All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq*.

[2]    As for Plaintiff's Title VII, 42 U.S.C. §§2000e, *et seq*. claim, while Defendants' motion asserts that all of the named defendants move for summary judgment, because Plaintiff does not assert a Title VII claim against Vitran Express, Inc., Vitran Express Canada, Inc., or Vitran Corporation, Inc., this decision has no bearing on any Title VII claims as to those parties. Additionally, while Plaintiff brings a breach of contract claim and a Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1 *et seq*. claim against all of the Defendants, only HR-1 and CT Transport seek summary judgment as to those claims. Again, this decision has no bearing on the outcome of those claims against any non-moving parties.

## II. BACKGROUND

Plaintiff, Darrell Harris ("Plaintiff") was recruited by Defendant Vitran Express, Inc. ("VEI") with six other senior executives from FedEx to lead a turnaround of VEI's troubled United States truck-based freight operations. Plaintiff began his employment with VEI on August 1, 2012 in the capacity of Senior Vice-President of Sales and Marketing/Pricing. Thereafter, Plaintiff entered into a written Executive Employment Agreement with VEI on January 25, 2013, confirming Plaintiff's initial base salary of $250,000.00, and providing for severance pay equal to twelve or eighteen months' salary plus bonuses due upon Plaintiff's separation from employment, unless Plaintiff was terminated for cause. The Employment Agreement defined "cause for termination" as the commission of "a criminal offence [sic] involving theft, fraud or dishonesty[.]" Employment Agreement [ECF No. 71-5] at 4-5. The Employment Agreement further required Plaintiff to "devote the whole of his time, attention and ability to the business of the Company insofar as they are directed towards business interest. [Plaintiff] shall competently and faithfully serve the Company and use his best efforts to promote the interests thereof." *Id*. at 1.

After Plaintiff commenced his employment with VEI, he and his fellow senior executives demanded and received certain assurances from VEI's parent corporation, Defendant Vitran Corporation, Inc., ("Vitran Corp.") which included a written guaranty of Plaintiff's Employment Agreement by these two entities. On June 25 2013, VEI and Vitran Corp. entered into a Retention Incentive Agreement with Plaintiff, obligating the entities to pay Plaintiff $62,500.00 if Plaintiff was still employed by December 31, 2013, an additional $125,000.00 if Plaintiff was still employed by April 30, 2014 and both sums if Plaintiff was terminated without cause or following a change in control of VEI.

2

During this period, VEI's financial condition continued to deteriorate. On October 7, 2013, in a last ditch effort to avoid bankruptcy, the stock of VEI's parent company, Vitran Corporation, Inc., was sold to Defendant Data through a Stock Sale and Purchase Agreement. Matthew Moroun is the sole owner and member of Data. Plaintiff alleges that Defendants HR-1 and CT Transport were involved in the stock sale and decision making at VEI following the sale and that Moroun is their common owner.[3]

Approximately ten days following VEI's sale to Data, Moroun received notice that VEI was in jeopardy of losing its General Electric account, one of VEI's top three customer accounts. When Moroun received this notice, Plaintiff was in Texas performing sales calls and attending a motor carrier convention on behalf of VEI. Moroun directed that Plaintiff, as VEI's highest-ranking sales executive, leave Texas immediately and try to save the General Electric account. Plaintiff refused this directive. To this end, Plaintiff testified:

> Q: And as you sit here today, you don't dispute that Mr. Moroun directed you to go visit GE in Florida on [October 17, 2013]? . . .
>
> A. He [Moroun] asked me to drop what I was doing and go to GE, yes.
>
> Q. And you don't dispute that you declined to do what he directed you to do? You didn't do it, correct?
>
> A. I did not do it.

Harris Dep. p. 242 [ECF No. 68-1 at 35]. Moroun terminated Plaintiff's employment the next day from VEI via a hand delivered letter. The letter stated:

> I was deeply disappointed when you told me that you would not help try to save the GE Transport account. As you know, GE is one of [VEI's] largest accounts and we are in jeopardy of losing it. You are the salesperson on this

---

[3] Neither party expounds upon the responsibilities of these corporations nor adequately describes the corporate relationship between VEI, CT Transport and/or HR-1 in their concise statements of material facts. The only apparent relationship between these companies is that Matthew Moroun is their common owner.

3

> account. Losing it will have severe financial implications.
>
> Your refusal to assist on this critical issue is a material breach of your employment agreement, which obligates you to perform the "duties . . . assigned to" you. I asked you – [VEI's] Senior Vice-President, Sales and Marketing/Pricing – to help save a major account. You refused to do so.
>
> In light of your material breach of your employment agreement, we are terminating your employment with cause effective immediately.

October 17, 2013 Moroun Letter [ECF No. 68-2 at 10]. Plaintiff testified in response to his termination:

> A. I wouldn't have any problem going to visit GE. However, the request to abandon other customers on a prescheduled trip to go visit GE for something that GE is completely unaware that I need to be there for, has not requested, simply because Matt Moroun feels that I need to go there, for me that's an unreasonable thing to terminate someone's employment for, that has had no track history for poor performance or anything like that. I've never in my entire career seen that type of thing happen to an individual before.

Harris Dep. [ECF No. 68-1 at 34-35] at 214-242. It was also later learned that while in Texas, Plaintiff interviewed for a job with one of VEI's direct competitors, however Plaintiff disputes this point.

On November 4, 2013, after Plaintiff was terminated, VEI instituted a state court declaratory judgment action in the Butler County Court of Common Pleas to determine whether VEI must pay retention and severance payments to Plaintiff pursuant to their agreements, and if so, in what amount, or whether Plaintiff forfeited his claim to those payments by materially breaching the agreements along with the fiduciary duties he owed to VEI. On February 12, 2014, Plaintiff filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination under Title VII. The Charge named VEI as the respondent, and mentioned Moroun in the discrimination charge. In his Charge, Plaintiff stated that he was discriminated against as follows:

4

> 1. My date of hire with the respondent was August 1, 2012. I was employed with the respondent in the position of Senior Vice President-Sales & Marketing. On or about October 18, 2013, I was discharged from my position.
>
> 2. I was informed by Matthew Moroun (Owner) that I was being discharged. Mr. Moroun provided a written letter claiming that I had "refused to assist in saving a major account". [sic]
>
> 3. I believe I was discriminated against because of my race, black, in violation of Title VII of the Civil Rights Act of 1964, as amended, in that after purchasing the company on October 7, 2013, Mr. Moroun abruptly terminated my employment. I was the only executive that was discharged. All other executives (who differ from me by race) were offered packages to leave or were kept on in some capacity. I was the only person of color in an executive position.

Pl.'s Charge of Discrimination [ECF No. 68-3]. Plaintiff received a Right to Sue letter from the EEOC on or about April 10, 2014.

Plaintiff initiated the present action on May 30, 2014 against VEI, Vitran Express Canada, Inc., Vitran Corporation, Inc., Data Processing, Inc. ("Data"), HR-1 Corporation ("HR-1"), and CT Transport Inc. ("CT"). Plaintiff's complaint alleges the following: (1) a breach of contract claim against all Defendants; (2) a violation of the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1, *et seq.*, ("WPCL") against all Defendants; and (3) a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, ("Title VII") for race discrimination against Data, HR-1 and CT Transport.

HR-1 and CT Transport now move for summary judgment on all of the claims against them, while Data moves for partial summary judgment on the Title VII claim against it. HR-1 and CT Transport argue that Plaintiff's breach of contract claim fails because Plaintiff cannot prove the existence of a contract between him and HR-1 or CT Transport. HR-1 and CT Transport argue that Plaintiff's WPCL claim also fails because it is derivative of his breach of contract claim. Lastly, all moving Defendants argue that Plaintiff's Title VII claim is precluded under the "named respondent" rule because these Defendants were not named in the EEOC

complaint, and alternatively Plaintiff has not otherwise established a *prima facie* case for race discrimination or established that the reason for his termination was pretext for race discrimination.

For the reasons that follow, the Court agrees with the moving Defendants and finds that HR-1 and CT Transport are entitled to summary judgment on the breach of contract and WPCL claims, and that all of the moving Defendants are entitled to summary judgment on Plaintiff's Title VII race discrimination claim.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007); *UPMC Health System v. Metropolitan Live Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989) (the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e. depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322. *See also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare

assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Garcia v. Kimmell*, 381 F. App'x 211, 213 (3d Cir. 2010) (quoting *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005)).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. *Batsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). *See also El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007).

## IV. DISCUSSION

### 1. Breach of Contract Claim against HR-1 and CT Transport

First, Defendants HR-1 and CT Transport move for summary judgment on Plaintiff's breach of contract claim.

It is a general principal of Pennsylvania contract law that "a contract cannot legally bind persons not party thereto." *Chambers Dev. Co. v. Com., ex rel. Allegheny Cty. Health Dep't*, 81 Pa. Cmwlth. 622, 626, 474 A.2d 728, 731 (1984) (citing *Cumberland-Perry Area Vocational-Tech. Sch. Auth. v. Bogar & Bink*, 261 Pa. Super. 350, 354, 396 A.2d 433, 435 (1978)). Under Pennsylvania contract law, "a person not party to a contract cannot be held liable for breach." *Matter of Estate of Barilla*, 369 Pa. Super. 213, 219, 535 A.2d 125, 128-29 (1987) (citing *Hampton v. Holmesburg Prison Offl's.*, 546 F.2d 1077, 1082 n.4 (3d Cir. 1976)). *See also Furniture Sols. & Res. v. Symmetry Office, LLC*, No. CIV. A. 15-4774, 2015 WL 9302915, at *3 n. 2 (E.D. Pa. Dec. 22, 2015).

7

Plaintiff's breach of contract claim alleges that HR-1 and CT Transport "materially breached the terms of [his] Employment Agreement, Retention Incentive Agreement and Guaranty by failing to pay [him] amounts due and owing under such agreements." Compl. [ECF No. 1] at ¶ 31. Defendants CT Transport and HR-1 seek judgment in their favor arguing that they were not parties to any of the above contracts, and as such Plaintiff has no arguable basis upon which to assert a breach of contract claim.

In response, Plaintiff does not argue that a valid contract between him and CT Transport and HR-1 exists, but rather argues that "for Title VII jurisdictional purposes [these defendants] may be treated as a single employer." Pl.'s Op. Br. [ECF No. 71] at 12.

Plaintiff's argument is without merit. Whether CT Transport and HR-1 can be considered Plaintiff's employers under Title VII has no bearing on whether a valid, enforceable contract exists between these parties. By their own terms, VEI and Plaintiff are parties to the Executive Employment Agreement; Vitran Express Canada, VEI and Plaintiff are parties to the Guaranty; and Vitran Express Canada, VEI and Plaintiff are parties to the Retention Incentive Agreement. *See* Def.'s SMF [ECF No. 67] ¶¶6-8, 11. Furthermore, Plaintiff has not asserted that these Defendants are intended third party beneficiaries of any of the aforementioned contracts. Accordingly, because there is no evidence of record showing that Defendants HR-1 or CT Transport are parties to the allegedly breached contracts or that any contracts exist between HR-1, CT-Transport and Plaintiff, HR-1 and CT Transport are entitled to summary judgment in their favor on this claim.

> 2. *Pennsylvania Wage Payment and Collection Act Claim against HR-1 and CT Transport*

Defendants HR-1 and CT Transport move for summary judgment on Plaintiff's WPCL claim.

8

"The Wage Payment and Collection Law provides employees a statutory remedy to recover wages and other benefits that are *contractually* due to them." *Lehman v. Legg Mason, Inc.*, 532 F.Supp.2d 726, 733 (M.D. Pa. 2007) (quoting *Oberneder v. Link Computer Corp.*, 548 Pa. 201, 204, 696 A.2d 148, 150 (1997) (emphasis in original)). Therefore, to seek relief under the WPCL, the plaintiff must show there is a contract between himself and his employer "that sets forth their agreement on wages to be paid[; r]elief under the WPCL is implausible without existence of a contract." *Lehman*, 532 F. Supp. 2d at 733 (collecting cases). Where there is no contract between the employee and employer, the employee cannot seek relief under the WPCL.

Here, Plaintiff has failed to bring forth any evidence that a contract existed between him and HR-1 or CT Transport, or that he is otherwise entitled to any statutory wages. Accordingly, HR-1 and CT Transport are entitled to summary judgment in their favor for Plaintiff's WPCL claim.

*3. Title VII Race Discrimination Claim against Data, HR-1 and CT Transport*

Lastly, Data, HR-1 and CT Transport seek summary judgment on Plaintiff's Title VII race discrimination claim. The moving Defendants provide three arguments in support of their motion: (1) Plaintiff failed to exhaust administrative remedies before filing suit; (2) Plaintiff failed to establish a *prima facie* case of race discrimination; and (3) Plaintiff failed to establish evidence that the reason for his termination was pretext for race discrimination.

A.  Exhaustion of Administrative Remedies under Title VII

Title VII proscribes "status-based discrimination by employers, employment agencies, labor organizations, and training programs." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2530, 186 L. Ed. 2d 503 (2013). Claims brought under the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. §§ 951 *et seq.* are generally "interpreted coextensively with Title VII

claims." *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 213 (3d Cir. 2015) (citations and internal quotes omitted).

Before filing suit pursuant to Title VII or the PHRA, an employee must exhaust all administrative remedies by filing a Charge of Discrimination with the appropriate state or federal agency. 42 U.S.C. § 2000e-5(f)(1); *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984). Generally, Title VII or PHRA claims are only permitted to be brought against those named as a "respondent" in the administrative action. 42 U.S.C. § 2000e-5(f)(1); *Schafer v. Bd. of Pub. Educ. of the Sch. Dist. of Pittsburgh, Pa.*, 903 F.2d 243, 252 (3d Cir. 1990). The purpose of this rule is twofold: to "alert the implicated parties and to encourage an informal conciliation process in lieu of trial." *Urey v. E. Hempfield Twp.*, No. CIV.A. 08-5346, 2009 WL 561664, at *3 (E.D. Pa. Mar. 4, 2009). However, there is a recognized exception to the exhaustion requirement that allows a plaintiff to sue a party not specifically named in the discrimination charge "when the unnamed party received notice and when there is a shared commonality of interest with the named party." *Schafer*, 903 F.2d at 252. *See also Glus v. G. C. Murphy Co.*, 629 F.2d 248, 257 (3d Cir. 1980) *cert. granted, judgment vacated sub nom. Retail, Wholesale & Dep't Store Union, AFL-CIO v. G.C Murphy Co.*, 451 U.S. 935, 101 S. Ct. 2013, 68 L. Ed. 2d 321 (1981).[4] For example, district courts applying this exception have found an exception to exhaustion where the body or substance of the EEOC and/or PHRA complaint mentioned the individual defendants, or adequately described the acts of discrimination committed by the defendants. *See Urey*, 2009

---

[4] The *Glus* factors are: (1) whether the role of the unnamed party could be ascertained at the time of the filing of the EEOC complaint through reasonable effort by the complainant; (2) whether, under the circumstances, the interests of a named party are so similar to the unnamed party that, for purposes of obtaining voluntary conciliation and compliance, it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether the unnamed party sustained any prejudice from its absence from the EEOC proceedings; and (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is through the named party. *Glus*, 629 F.2d at 251.

WL 561664, at *3 (collecting cases).

Defendants argue that Plaintiff's race discrimination claim is barred under the "named respondent" rule, which as aforementioned, only allows a Title VII claim to be brought against a party named as a "respondent" in the administrative action. Defendants also argue that they were not Plaintiff's employer for Title VII purposes, but they fail to support this argument with any applicable case law or analysis. This Court acknowledges that for an employee to prevail on a Title VII claim, "he must demonstrate the existence of an 'employment relationship'" with the alleged discriminatory party, but because this issue is only mentioned in passing and not adequately briefed, *see Carpenter v. Vaughn*, 888 F. Supp. 635, 648 (M.D. Pa. 1994) ("It is not the customary practice, nor even an acceptable practice, before this court to provide a brief, memorandum or other document which simply lists issues and directs the court to a place where it can do its own research."), and more importantly for this Court's purposes, it is not a jurisdictional issue, *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 83 (3d Cir. 2003) (whether an "employer" exists for Title VII purposes is a substantive element and not jurisdictional), the issue of whether Data, HR-1 and/or CT Transport were Plaintiff's "employers" will not be a determining factor in this decision and is deemed waived for purposes of this motion.

Plaintiff responds that exhaustion should be waived and argues that "Defendants exist as various entities of the same parent company[,]" and they should all be responsible for the alleged discrimination. Pl.'s Op. Br. [ECF No. 71] at 10. However, Plaintiff's response conflates the standard for waiving exhaustion for failing to name a party in a discrimination charge, and whether a corporate parent can be held responsible for the alleged discriminatory acts of its subsidiaries. Whether a parent/subsidiary relationship between the Defendants exists to state a valid discrimination claim was again not adequately briefed by either party, nor is there an

11

adequate record on the matter, and this decision will not include any determination whether the interrelatedness of the moving Defendant companies may satisfy treating them as a single employer for Title VII purposes. *See Nesbit*, 347 F.3d 72, 86 (a court "shall deem a parent and subsidiary a single employer when the parent has directed the subsidiary to perform the allegedly discriminatory act in question. By directing such an act, the parent disregards the separate corporate existence of the subsidiary and thus forfeits the right to be treated as a separate entity for Title VII purposes."). Therefore, the Court will turn to determining whether exhaustion should be waived for failing to name Data, HR-1 and CT Transport in the Discrimination Charge.

Here, it is undisputed that Plaintiff did not name Data, HR-1 or CT Transport in his Discrimination Charge. Plaintiff exclusively named Defendant VEI as the Respondent and named his superior, Matthew Moroun, in the body of the charge. The entirety of the charge states:

> 1. My date of hire with the respondent was August 1, 2012. I was employed with the respondent in the position of Senior Vice President-Sales & Marketing. On or about October 18, 2013, I was discharged from my position.
>
> 2. I was informed by Matthew Moroun (Owner) that I was being discharged. Mr. Moroun provided a written letter claiming that I had "refused to assist in saving a major account". [sic]
>
> 3. I believe I was discriminated against because of my race, black, in violation of Title VII of the Civil Rights Act of 1964, as amended, in that after purchasing the company on October 7, 2013, Mr. Moroun abruptly terminated my employment. I was the only executive that was discharged. All other executives (who differ from me by race) were offered packages to leave or were kept on in some capacity. I was the only person of color in an executive position.

Pl.'s Charge of Discrimination [ECF No. 68-3].

While it is arguable that Data, HR-1 and CT Transport had notice of the charge through Moroun as their common owner, there is no connection between the discrimination alleged in the

Charge against VEI and Moroun and any conduct of Data, HR-1 or CT Transport. Plaintiff did not allege at any time in the body of his Discrimination Charge that Data, HR-1 or CT Transport discriminated against him in any way. Plaintiff seemingly argues that because Moroun is a common owner of all of these companies and because Plaintiff had some connection to these companies through Moroun, that any discrimination alleged against Moroun should be imputed to Moroun's other companies. The Court is unconvinced that the marginal entanglement of corporate ownership alone is enough to impute allegedly discriminatory conduct to Data, HR-1 and CT Transport. Just as there is "nothing inherent to a supervisor's role that would automatically implicate him in an employee's discrimination claim against [his] employer," *Kunwar v. Simco, a Div. of Illinois Tool Works, Inc.,* 135 F. Supp. 2d 649, 654 (E.D. Pa. 2001), there is nothing inherent in an individual's company ownership that automatically implicates every other company owned by him in a discrimination charge against one of his companies.

Accordingly, because of the lack of connection between the discrimination alleged against VEI and Moroun in Plaintiff's Charge, the Court finds that he failed to exhaust his administrative remedies as to those parties, and as such they are entitled to summary judgment on Plaintiff's Title VII race discrimination claim.

B. Title VII Race Discrimination Claims against Data, HR-1 and CT Transport

Assuming *arguendo* that Plaintiff's failure to name Data, HR-1 and CT Transport in his Charge is excused, Plaintiff has failed to proffer sufficient evidence establishing that his termination of employment was pretext for racial discrimination.[5]

---

5     The Court will assume without finding that Plaintiff has articulated a *prima facie* case of racial discrimination. He has alleged that he is an African American, was highly qualified and recruited by Defendant VEI for his executive position, was terminated and did not receive his severance benefits, and similarly situated Caucasian executives were not terminated, or received their severance benefits. *See Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir.

Plaintiff alleges that Defendants have discriminated against him based upon his African American race because he was terminated and VEI failed to pay him under his severance agreement, whereas white executives who were terminated received their severance benefits under their executive agreements.[6]

Where a plaintiff has established a *prima facie* case, and there is no direct evidence of discrimination, the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973) applies to the discrimination claims. *See Merke v. Lockheed Martin*, --- F. App'x ---, ---, No. CIV. A. 15-1993, 2016 WL 1105401, at *3 (3d Cir. Mar. 22, 2016). After a *prima facie* case is met, the burden shifts "to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection" and the plaintiff must be afforded an opportunity to show that the employer's stated reason for the plaintiff's adverse employment action was mere pretext for its discrimination. *Iadimarco v. Runyon*, 190 F.3d 151, 157-58 (3d Cir. 1999) (citations and internal quotation marks omitted). The employer's burden of production is "relatively light and is satisfied if [the employer] articulates any legitimate

---

1999); *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (a prima facie case of a disparate treatment race discrimination claim is established where the plaintiff alleges that (1) he belongs to a protected class; (2) was qualified for the position; (3) he experienced an adverse employment action; and (4) the adverse employment action gave rise to an inference of discrimination).

[6] It is unclear whether Plaintiff's claim that VEI failed to pay him severance benefits post-termination is a cognizable "adverse employment action" for purposes of Title VII, as this occurred post-termination, and overwhelmingly resounds in a common law breach of contract action. *See Glansman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 516 (3d Cir. 2004) (after an employment relationship is "terminated, it [is] not possible for [an employee] to suffer adverse employment action."). In this same vein, it is also arguable that the moving Defendants took no adverse employment action against Plaintiff, as there is no evidence that they played any role in his termination. However, because Defendants failed to raise these issues, and Plaintiff does not maintain this action based on a retaliation theory, but rather a disparate treatment theory, the Court will not discuss it. *See Carpenter*, 888 F.Supp. at 648 ("A litigant who fails to press a point by supporting it with pertinent authority or by showing why it is a good point despite a lack of authority . . . forfeits the point.").

reason" for the adverse employment action. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). Numerous courts have found that failing to follow a superior's directive and insubordination is a legitimate, non-discriminatory reason for an employee's termination. *See Schomburg v. Dow Jones & Co.*, 588 F. App'x 132, 135 (3d Cir. 2014) (terminating employee for failing to accept new work assignments was legitimate, non-discriminatory reason for termination); *Bisbing v. Lehighton Ambulance Ass'n, Inc.*, 142 F. App'x 71, 74 (3d Cir. 2005) (terminating employee for insubordination to his superiors constituted a legitimate non-discriminatory reason for termination); *Scott v. Sandusky Cty. of Adams, Pa.*, No. CIV. A. 13-2507, 2015 WL 4621091, at *7 (M.D. Pa. July 31, 2015) (insubordination and unwillingness to perform assigned duties is a legitimate, non-discriminatory reason for termination); *Baur v. Crum*, 882 F. Supp. 2d 785, 808 (E.D. Pa. 2012) *aff'd*, 517 F. App'x 101 (3d Cir. 2013) (same); *Campbell v. FYDA Freightliner Pittsburgh, Inc.*, No. CIV. A. 07-0245, 2008 WL 3539991, at *8 (W.D. Pa. Aug. 13, 2008) (same); *Finnegan v. Ross Twp.*, No. CIV. A. 07-405, 2008 WL 2571853, at *4 (W.D. Pa. June 25, 2008) (same); *Moyer v. Kaplan Higher Educ. Corp.*, 413 F.Supp.2d 522, 527 (E.D.Pa.2006) (same); *Brown v. DB Sales, Inc.*, No. Civ. A. 04-1512, 2005 WL 3591533, at *7 (E.D.Pa. Dec.29, 2005) (same).

Here, Defendants have proffered a legitimate, non-discriminatory reason for Plaintiff's termination. It is undisputed that Plaintiff was terminated because he failed to obey a directive from his supervisor when he refused a directive to travel to one of VEI's largest accounts when the company learned it was at risk of losing the account. Plaintiff's duties, as VEI's Vice President of Sales and Marketing/Pricing of VEI, included contractual and fiduciary duties to assist in saving this account. Plaintiff admits that he refused this directive, but qualifies his conduct by explaining that he did not agree with Moroun's business judgment in directing

15

Plaintiff to abort his business trip in Texas to redeploy his efforts in saving the GE account.[7]

"To survive summary judgment when the employer has articulated a legitimate, non-discriminatory reason for its action, the plaintiff must point to some evidence . . . from which a fact-finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely or not a motivating or determining cause of the employer's action." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644 (3d Cir. 1998) (quoting *Fuentes*, 32 F.3d at 764). To make the employer's stated reason for termination suspect, the employee

> need not "produce evidence that necessarily leads to the conclusion that the employer acted for discriminatory reasons, nor produce additional evidence beyond [his] *prima facie* case." *Id*. (citations omitted). The plaintiff must, however, point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the proffered nondiscriminatory reason did not actually motivate the employer's action."

*Simpson*, 142 F.3d at 644 (quoting *Fuentes*, 32 F.3d at 764-65). The evidence proffered by the employee must have "sufficient probative force that a factfinder could conclude by a preponderance of the evidence" that that employee's race "was a motivating or determinative factor in the employment decision." *Id*. The employee may provide evidence that the employer "(1) has previously discriminated against [him]; (2) has discriminated against other persons within the plaintiff's protected class or within another protected class; or (3) that the employer has treated more favorably similarly situated persons not within the protected class." *Finnegan v. Ross Twp.*, No. CIV. A. 07-405, 2008 WL 2571853, at *5 (W.D. Pa. June 25, 2008) (quoting

---

[7] There is also a disagreement as to whether Plaintiff interviewed for a job with a competitor while on assignment in Texas for VEI. However, this point is not determinative to the outcome, as Plaintiff admits refusing a directive of his superior, which is a legitimate, non-discriminatory reason for termination.

*Simpson*, 142 F.3d at 645) (additional citations omitted). While a plaintiff need not adduce evidence directly contradicting the employer's legitimate explanation for the adverse employment action, it is not enough for a plaintiff to avoid summary judgment by simply "arguing that the factfinder need not believe the defendant's proffered legitimate explanations[.]" *Fuentes*, 32 F.3d at 764. To discredit the employer's reason, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Id*. at 765.

Here, Plaintiff provides no evidence that moving Defendants Data, HR-1 or CT Transport previously discriminated against him, discriminated against other African American employees, or treated any non-African American employee more favorably than Plaintiff. While Plaintiff need not adduce direct evidence of discrimination, he seeks to avoid summary judgment by arguing that the fact finder need not believe Defendants when they assert Plaintiff was terminated and did not receive severance benefits because he failed to obey a superior's directive. It is also tenuous to assert that VEI and Moroun's allegedly discriminatory actions should be imputed by extension to Data, HR-1 and CT Transport. Again, it is undisputed that Plaintiff failed to follow Moroun's directive to leave his work trip in Texas to redeploy his efforts to help save an important VEI customer. Plaintiff offers no evidence of pretext, but rather questions the reasonableness of his termination and the reasonableness in VEI's failure to pay him severance benefits. Plaintiff provides nothing but his own testimony that the failure to pay him severance after he was terminated was racially motivated and there is otherwise no evidence of record from which a jury could conclude that Data, HR-1 or CT-Transport used his insubordination and failure to follow directives as pretext for racial discrimination.

Accordingly, because Plaintiff has failed to show pretext, Data, HR-1 and CT Transport's motion for summary judgment on Plaintiff's race discrimination claims pursuant to Title VII is granted.

## V. CONCLUSION

For the foregoing reasons, Defendants Data, HR-1 and CT Transport's motion for summary judgment [ECF No. 65] is granted. An appropriate Order follows.

Dated: March 31, 2016

By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all registered counsel via CM-ECF