IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| DARRELL HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | 2:14-CV-00704-CRE |
| | ) | |
| vs. | ) | |
| | ) | |
| VITRAN EXPRESS, INC., VITRAN | ) | |
| EXPRESS CANADA, INC., VITRAN | ) | |
| CORPORATION, INC., DATA | ) | |
| PROCESSING, LLC, HR-1, | ) | |
| CORPORATION, CT TRANSPORT, INC., | ) | |
| | ) | |
| Defendants, | ) | |

## <u>MEMORANDUM OPINION</u>[1]

CYNTHIA REED EDDY, United States Magistrate Judge.

### I.  INTRODUCTION

Presently before the court for determination is whether Plaintiff Darrell Harris ("Plaintiff") is entitled to summary judgment under Federal Rule of Civil Procedure 56 for his remaining breach of contract and Pennsylvania Wage Payment and Collection Law claims against his former employer Defendant Vitran Express, Inc. ("VEI").  The parties have responded to the Court's notice and the issue is fully ripe for disposition.  For the reasons that follow, summary judgment is granted in Plaintiff's favor for his remaining claims.

### II.  BACKGROUND

Because this Court has discussed the factual background of this case in previous decisions, *see* 3/31/2016 Memo. Op. [ECF No. 75]; 10/14/2014 Rep. and Rec. [ECF No. 29],

---

[1]  All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq.*

only the facts necessary to determine whether Plaintiff is entitled to summary judgment on his breach of contract claims will be discussed.

Plaintiff was recruited by VEI with six other senior executives from FedEx to lead a turnaround of VEI's troubled United States truck-based freight operations. Plaintiff began his employment with VEI on August 1, 2012 in the capacity of Senior Vice-President of Sales and Marketing/Pricing. Thereafter, on January 23, 2013, Plaintiff and VEI entered into an Executive Employment Agreement ("Employment Agreement") "to reflect [Plaintiff's] current employment arrangements with the Company and additional benefits he will receive in the event that there is a change in control [of VEI.]" Employment Agreement [ECF No. 71-5] at 1. The Employment Agreement described Plaintiff's employment position as follows:

> The Executive [Plaintiff] shall continue to serve the Company in the capacity of Senior Vice-President, Sales and Marketing/Pricing, Vitran Express, US. The Executive shall report to the President, Vitran Express US and shall perform such duties, and exercise such powers as are incidental to such position and such other duties and powers as may from time to time be assigned to him by the President, Vitran Express US.
> The Executive agrees that he shall devote the whole of his time, attention and ability to the business of the Company insofar as they are directed towards business interests. He shall competently and faithfully serve the Company and use his best efforts to promote the interests thereof.

*Id*. at § 1. The Employment Agreement provided Plaintiff with an annual base salary of $250,000 for an indefinite term, until terminated in accordance with the terms of the agreement. *Id*. at §2(a); §3(a). The Employment Agreement includes a termination provision as follows:

> This agreement and the Executive's employment shall terminate in the following events:
>
> (i)     by mutual agreement of the parties;
>
> (ii)    if the Company has "cause for termination" (as defined in Section 3(c)), the Company may terminate the Executive forthwith, with no notice or payment in lieu of notice;
>
> (iii)   if the Company terminates the Executive without cause for termination, the Executive shall be entitled to a lump sum amount equivalent to twelve

(12) months' compensation. . . .

(iv)     in the event there is a "change in control" (in the circumstances set out in paragraph A, paragraph B or paragraph C of the definition of change of control set out in Section 3(c)) while the Company is a subsidiary of Vitran Corporation, Inc., (the "**Parent**"), and the Company terminates the Executive without cause for termination, at any time within 365 days after the effective date of the change of control, the Company will pay to the Executive a lump sum amount equivalent to eighteen (18) months' compensation.

*Id*. at § 3(b)(i)-(iv). The Employment Agreement defines "cause for termination" as "if the Executive commits a criminal offence [sic] involving theft, fraud or dishonesty[.]" *Id*. at §3(c). The agreement does not ascribe a definition to the term "without cause for termination." The agreement defines a "change in control" as the following:

(A)     as a result of a takeover bid or other transaction, that in either case is not supported by a majority of the directors of the Parent, any person, company, association, partnership or any of them singly or under any voting trust or similar arrangement, has the legal ability to cause to be cast votes with respect to greater than 50% of the shares of the Parent at any meeting of the shareholders called for the purpose of electing the directors of the Parent; or

(B)     as a result of a takeover bid, merger, consolidation or other business combination, or sale of assets of the Parent, that in each case is supported by a majority of the directors of the Parent, (i) the Company is no longer a subsidiary of the Parent, or (ii) the persons who were the directors of the Parent immediately before the transaction, cease to constitute a majority of the board of directors of the Parent either directly, or indirectly, as a result of the applicable transaction[.]"

*Id*. at § 3(c)(A)-(B).

Lastly, the Employment Agreement includes a "Payments in Satisfaction" provision that provides in pertinent part:

The Executive acknowledges and agrees that the payments provided for in this Section 3 [related to termination] . . . shall be in full and final settlement and satisfaction of any and all claims, demands, actions and suits whatsoever which the Executive may claim to have against the Company and its affiliates and their respective officers, directors, employees and their successors and assigns relating

3

to the Executive's employment with the Company and the termination of the Executive and this agreement by the Company. The Executive further agrees that if requested by the Company, he will execute and deliver a release in favour [sic] of the Company and resignations from any position of office that he then holds with the Company or any affiliate, in each case in a form reasonably acceptable to the Company in exchange for the payments provided for in this Article 3.

*Id*. at § 3(e).

After the parties entered into the Employment Agreement, VEI's financial condition continued to deteriorate and on June 25, 2013, the parties entered into a Retention Incentive Agreement which obligated VEI or its Parent to pay Plaintiff $62,500.00 if he continued his employment with VEI or its affiliate through December 31, 2013, and $125,000.00 if he continued his employment with VEI or its affiliate through April 30, 2014. Retention Incentive Agreement at § 1(a)-(b) [ECF No. 71-5]. The agreement further provides in pertinent part that:

(c) . . . the Executive shall remain entitled to receive the First Retention Payment and the Second Retention Payment if the Executive ceases to be an active employee of the Company or an affiliate of the Company at any time prior to the Second Retention Date [(or April 30, 2014)]: (i) on account of the Executive's termination by the Company or its applicable affiliate without "cause for termination" in which case payment of both the First Retention Payment and the Second Retention Payment, if and to the extent not then paid, shall be made by the Company or, failing payment by the Company, by Parent to the Executive within five (5) business days after the date of the Executive's termination by the Company or its applicable affiliate. . . .

*Id*. at § 1(c)(i). The Retention Incentive Agreement does not ascribe a definition to the term "without 'cause for termination,'" but rather provides that: "[t]he terms and conditions of the Employment Agreement shall continue in full force and effect." *Id*. at § 2(a).

On October 7, 2013, in a last ditch effort to avoid bankruptcy, the stock of VEI's parent company, Vitran Corporation, Inc., was sold to Defendant Data through a Stock Sale and Purchase Agreement. Matthew Moroun is the sole owner and member of Data. VEI claims that after the closing of the sale, Plaintiff took an unexcused absence to interview with a competitor,

and in the weeks following the sale, he failed to engage and perform critical sales analysis following the sale.

Approximately ten days following VEI's sale to Data, Moroun received notice that VEI was in jeopardy of losing its General Electric account, one of VEI's top three customer accounts. When Moroun received this notice, Plaintiff was in Texas performing sales calls and attending a motor carrier convention on behalf of VEI. There are also claims that at the convention, Plaintiff was interviewing with VEI competitors or was contacting VEI competitors to hire Plaintiff. Moroun directed that Plaintiff, as VEI's highest-ranking sales executive, leave Texas immediately and try to save the General Electric account. Plaintiff refused this directive. Moroun terminated Plaintiff's employment the next day from VEI via a hand delivered letter. The letter stated:

> I was deeply disappointed when you told me that you would not help try to save the GE Transport account. As you know, GE is one of [VEI's] largest accounts and we are in jeopardy of losing it. You are the salesperson on this account. Losing it will have severe financial implications.
>
> Your refusal to assist on this critical issue is a material breach of your employment agreement, which obligates you to perform the "duties . . . assigned to" you. I asked you – [VEI's] Senior Vice-President, Sales and Marketing/Pricing – to help save a major account. You refused to do so.
>
> In light of your material breach of your employment agreement, we are terminating your employment with cause effective immediately.

October 17, 2013 Moroun Letter [ECF No. 68-2 at 10]. Plaintiff never received any payment under the Employment Agreement or Retention Incentive Agreement.

The remaining claims in this case are whether VEI breached its Employment Agreement and Retention Incentive Agreement with Plaintiff by failing to pay Plaintiff severance and retention benefits under the agreements, and whether doing so violated the Pennsylvania Wage Payment and

Collection Law, ("WPCL") 43 P.S. §§ 260.1, *et seq.*[2] While a motion for partial summary judgment was previously submitted by the Defendants and decided by the Court, VEI did not move for summary judgment on Plaintiff's breach of contract claims. Likewise, Plaintiff did not move for summary judgment on his breach of contract claims against VEI. On June 30, 2016, the Court held a status conference issuing notice to the parties under Federal Rule of Civil Procedure 56(f) that the remaining issues on Plaintiff's breach of contract claims and attendant WPCL claims were matters of law for the court to determine and allowed the parties to file supplemental briefs on the issue of whether Plaintiff is entitled to summary judgment on his remaining claims for VEI's failure to pay Plaintiff severance and retention compensation. The parties filed cross-responses, replies, surreplies and supplemental briefing, *see* [ECF Nos. 113, 114, 115, 116, 118, 119, 120, 121, 126, 129, 130],

---

[2] By way of further background, the Defendants filed a declaratory judgment counterclaim against Plaintiff seeking a declaration that VEI was not obligated under the agreements to pay Plaintiff severance or retention compensation because of Plaintiff's actions resulting in a material breach of the agreements and that he breached his fiduciary duties to VEI. VEI did not seek a declaratory relief in its motion for summary judgment and has not otherwise briefed the issue of whether it is entitled to the requested declaratory relief. Likewise, Plaintiff did not move to dismiss Defendants' counterclaim for declaratory relief at any point, and this Court has made no determination as to the parties' rights or obligations under the agreement. "The decision to grant or withhold a declaratory judgment is committed to the discretion of the district court[.]" *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1170 (3d Cir. 1987); 28 U.S.C. § 2201. "A declaratory judgment is inappropriate solely to adjudicate past conduct. . . . Nor is declaratory judgment meant simply to proclaim that one party is liable to another." *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (citations omitted). VEI seeks declaratory relief to adjudicate its past conduct, *i.e.*, whether it was appropriate to terminate Plaintiff from his employment and not compensate him under the agreements which is an inappropriate reason to seek a declaratory judgment. *See Delaware State Univ. Student Hous. Found. v. Ambling Mgmt. Co.*, 556 F. Supp. 2d 367, 374 (D. Del. 2008) (declaratory judgment was inappropriate to determine whether terminating management contracts and ejecting defendant from plaintiff's property was proper, as the resultant damages were fixed by the contract, the parties' behavior would not be affected and there were no accrual of avoidable damages). Plaintiff has been terminated, the damages, if any, owed to Plaintiff are fixed by the contract, a declaration that Plaintiff's conduct forecloses him from collecting under the agreements would not affect the present behavior of the parties and there is no accrual of avoidable damages should the court use its discretion to determine whether VEI is entitled to a declaratory judgment. Therefore, the court will decline to exercise its discretion to determine whether VEI is entitled to a declaratory judgment on the matters sought by VEI.

thus the matter is ripe for disposition.

## III. STANDARD OF REVIEW

Rule 56 provides that a court may, after giving notice and a reasonable time to respond, grant a summary judgment motion for a non-movant, on grounds not raised by a party or consider summary judgment on its own after identifying for the parties material facts that may not genuinely be in dispute. Fed. R. Civ. P. 56(f)(1)-(3).

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 257 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). However, the "court need consider only the cited materials." Fed. R. Civ. P. 56(c)(3).

## IV.    DISCUSSION

### 1.    Liability for Breach of Contract

The crux of Plaintiff's breach of contract claims is that he was not paid severance or retention compensation as provided in the Employment Agreement and Retention Incentive Agreement and VEI is not entitled to withhold that compensation, as VEI was only entitled to do so had Plaintiff been terminated "for cause" and Plaintiff was not terminated "for cause" as that term is defined in the agreements.

Under Pennsylvania law, a party must establish three elements to establish a breach of contract: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir.2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa.Super.Ct.1999)). Unambiguous contracts are interpreted by the court as a matter of law. *Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 588 Pa. 470, 481, 905 A.2d 462, 469 (2006). In interpreting the language of a contract, a court attempts to ascertain the intent of the parties and give it effect. *Crawford Central Sch. Dist. v. Commonwealth of Pennsylvania*, 585 Pa. 131, 888 A.2d 616, 623 (2005). When the words of an agreement are clear and unambiguous, the intent of the parties must be gleaned from the language used in the agreement and an agreement's meaning must be determined from its contents alone. *Steuart v. McChesney*, 498 Pa. 45, 49, 444

A.2d 659, 661 (1982). The agreement "speaks for itself and a meaning cannot be given to it other than that expressed. Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence." *Id.* (citation and internal quotation marks omitted). "[T]he focus of interpretation is upon the terms of the agreement as *manifestly expressed*, rather than as, perhaps, silently intended." *Id.* (emphasis in original). Likewise, in determining the intent of the contracting parties, all provisions in the agreement will be construed together and each will be given effect. *Murphy v. Duquesne Univ. Of The Holy Ghost*, 565 Pa. 571, 591, 777 A.2d 418, 429 (2001). "Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed." *Id.*

VEI makes many arguments against granting Plaintiff summary judgment for the remaining claims against it, but all fail for the same basic reason: the plain language of the Employment Agreement and the Retention Incentive Agreement does not condition the payment of severance or retention compensation upon Plaintiff's performance in discharging his executive duties. Rather, it permits VEI to withhold severance and retention payments only if Plaintiff committed a criminal offense involving theft, fraud or dishonesty. A court looks to the plain language of the contract in interpreting an unambiguous contract, and the following is clear from the plain language of the Employment Agreement:

1. If Plaintiff is terminated with cause by VEI, as that term is later defined in the Employment Agreement as Plaintiff committing a criminal offense involving theft, fraud or dishonesty, then the Employment Agreement is terminated and Plaintiff is not entitled to any severance compensation;

2. If Plaintiff is terminated "without cause," by VEI – which term is left undefined by the contract – then Plaintiff is entitled to severance

compensation in the amount equivalent to twelve months' compensation; or

3. If Plaintiff is terminated "without cause" following a "change of control" of VEI – as that term has been outlined *supra* – then Plaintiff is entitled to severance compensation in the amount equivalent to eighteen months' compensation.

In this same vein, the Retention Incentive Agreement provides that if Plaintiff is terminated without cause prior to April 30, 2014, he is entitled to receive both the First and Second Retention payments as outlined in the agreement. The Retention Incentive Agreement further provides that the terms and conditions of the Employment Agreement shall continue in full force and effect, thus any term defined in the Employment Agreement employs the same definition in the Retention Incentive Agreement.

While the Employment and Retention Incentive Agreements fail to ascribe a definition to the term "without cause," this term is capable of only one reasonable interpretation because a court must give meaning to all of a contract's provisions. *See Krizovensky v. Krizovensky*, 624 A.2d 638, 642 (Pa. Super. Ct. 1993); *Insurance Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 480 (Pa. 2006). The agreements explicitly define "cause for termination" as Plaintiff committing a criminal offense involving theft, fraud or dishonesty; therefore, the only logical interpretation of termination "without cause" is Plaintiff being termination for any reason other than committing a criminal offense involving theft, fraud or dishonesty. As a consequence, under the agreements, Plaintiff is owed severance and retention compensation unless he commits a criminal offense involving theft, fraud or dishonesty. It is undisputed that Plaintiff was not terminated for committing a criminal offense involving theft, fraud or dishonesty, but rather for various performance and insubordination issues with VEI. Therefore, under the explicit terms of

the agreements, he was terminated without cause. Moreover, by the agreements' plain language, there is no provision that allows VEI to withhold severance or retention compensation for Plaintiff's poor performance, insubordination and/or inadequate execution of his executive duties, and the Court will not redraft the parties' broadly written, bargained-for agreement to find otherwise. Plaintiff is entitled to summary judgment on his remaining breach of contract claims under the plain language of the agreements for VEI's failure to pay him severance and retention compensation.

While Plaintiff is entitled to summary judgment in his favor for his breach of contract claims, the Court will nonetheless discuss VEI's well-briefed arguments against granting Plaintiff summary judgment.

First, VEI argues that the agreements should be rescinded based upon Plaintiff's failure of consideration under the agreements because the abdication of his executive duties constituted a lack of performance under the Employment Agreement. Primarily, VEI did not include in its counterclaim a breach of contract for Plaintiff's failure of consideration or failure to perform under the agreements or any other legal cause of action against Plaintiff. VEI's counterclaim simply sought a declaratory judgment, which will not be addressed by this Court. *See supra* Footnote 2. It is well-settled that pleadings cannot be amended through briefing. *See Carpenters Health v. Mgmt. Res. Sys. Inc.*, No. 15-2508, --- F.3d ---, ---, 2016 WL 4750520, at *4 (3d Cir. Sept. 13, 2016). "It is one thing to set forth theories in a brief; it is quite another to make proper allegations in a [counterclaim]." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). VEI never asserted a breach of contract claim against Plaintiff for failing to perform under the agreements and has waived any claim it seeks to assert here.

Insofar as VEI is asserting the affirmative defense that the agreements should be

rescinded, VEI has also waived any entitlement to rescind the agreements. Primarily, VEI's delay in seeking equitable relief amounts to a waiver. *See Sixsmith v. Martsolf*, 413 Pa. 150, 152, 196 A.2d 662, 663 (1964) (parties must act promptly on the discovery of the fraud or the ground for rescission, or the right to rescind is waived). According to VEI, Plaintiff "materially breached" the agreements sometime in late 2013. VEI is petitioning the court in the first instance in 2016 to rescind the agreements and provides no reason for its delay. The Court finds that a three year delay in seeking the rescission of a contract is grounds for waiver and declines to use its discretion to determine whether VEI is entitled to rescind the agreements. *Therien v. Trustees of Univ. of Pennsylvania*, No. CIV.A. 04-4786, 2006 WL 83448, at *3 (E.D. Pa. Jan. 10, 2006) ("Rescission is not a claim for relief or a cause of action, but rather it is an equitable remedy within a court's discretion.").

More importantly, VEI did not seek rescission as an affirmative defense and thus it is deemed waived. "Failure to raise an affirmative defense by responsive pleading or by appropriate motion generally results in the waiver of that defense." *Charpentier v. Godsil*, 937 F.2d 859, 863 (3d Cir. 1991). In diversity cases such as this one, federal courts defer to a state court's treatment of a matter as an affirmative defense. *Id.* Pennsylvania has held that rescission is an affirmative defense and failure to raise it constitutes a waiver. *Falcione v. Cornell Sch. Dist.*, 383 Pa. Super. 623, 628, 557 A.2d 425, 428 (1989). To that end, VEI has not raised rescission as an affirmative defense and the issue is waived.

Likewise, VEI failed to assert any such claim or defense involving Plaintiff's alleged "failure of consideration," or failing to perform his duties under the Employment Agreement (and thus entitling VEI to rescind the agreements), which constitutes a waiver of such claims or defenses. *See Carpenters Health and Zimmerman, supra*. Even if VEI were to adequately allege

such claims, a material failure of consideration excuses performance of an existing contract by the party on whose side there is no failure of consideration. *See Puckett v. United States*, 556 U.S. 129, 137, 129 S. Ct. 1423, 1430, 173 L. Ed. 2d 266 (2009) ("When the consideration for a contract fails—that is, when one of the exchanged promises is not kept—we do not say that the voluntary bilateral consent to the contract never existed, so that it is automatically and utterly void; we say that the contract was broken. . . . The party injured by the breach will generally be entitled to some remedy, which might include the right to rescind the contract entirely[.]"). Here, it is alleged that both parties failed to keep their exchanged promises, *i.e.*, Plaintiff allegedly failed to adequately discharge his employment duties to VEI's standards and VEI failed to pay Plaintiff his severance and retention compensation after terminating his employing without cause. Thus, the Court is hard pressed to apply the failure of consideration doctrine to rescind agreements that were purportedly breached by both parties, and to do so when no rescission affirmative defense was pleaded, nor was any breach of contract claim asserting the failure of consideration brought against Plaintiff.[3]

Next, VEI argues that Plaintiff's actions or inactions in his employment with VEI resulted in an abdication of his duties as Vice President of Sales and equated to a constructive resignation and thus Plaintiff cannot claim to have been terminated by VEI. VEI cites to no legal authority that an abdication of an executive's employment duties redrafts the explicit terms agreed to by the parties defining what constitutes termination and excuses the company from paying compensation therefrom. Further, while the Court rejects this argument, the observation

---

[3]     VEI also relies on *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 652 (2009) for the proposition that where there is a breach of contract that is directed at the essence of the contract and damages the trust of the contracting parties, the non-breaching party may terminate the contract without notice. *Id*. at 641 (plaintiff brought breach of contract action against defendant and defendant filed breach of contract counterclaim). However, VEI never asserted a breach of contract counterclaim against Plaintiff, thus VEI's reliance on this case is misplaced.

must also be made that both the Employment and Retention Incentive Agreements provide that Plaintiff is entitled to compensation if he resigns following a change in control of VEI. While no finding will be made as to whether there was a change in control of VEI, and VEI's "constructive resignation" argument is rejected, the Court makes this observation merely to show that Plaintiff could arguably be entitled to payments regardless of his termination by the company, or whether he "resigned" as VEI argues.

Next, VEI argues that the Court's Rule 56(f) Notice is in error because the Court failed to consider all of Plaintiff's wrongdoing that allegedly justified his termination and focused on Plaintiff's failure to follow a directive from a supervisor as grounds for his termination. As previously explained, under the explicit terms of the agreements, the only conduct that would justify withholding severance and retention compensation from Plaintiff is his commission of a crime involving theft, fraud or dishonesty, and it is undisputed that Plaintiff committed no such crime. To the extent that VEI argues that the Court's "Notice" was in error, it is unclear how a Rule 56(f) Notice can be in error.[4] A Rule 56(f) Notice is just that: notice. It is not a decision by the court and the court is merely required to place the parties on notice that it was intending to grant summary judgment in Plaintiff's favor on his remaining claims and give the parties an opportunity to respond thereto. The court is under no obligation to set forth every legal reason for granting summary judgment and only such obligation attaches in a decision such as this.

As previously explained, the justifications for terminating Plaintiff's employment that

---

[4] In the Court's notice, it stated that "the Court will take judicial notice of Defendants' stated reason for Plaintiff's termination as being a 'failure to follow a directive,' also described as insubordination." Order of 6/30/2016 [ECF No. 111]. Perhaps the term judicial admission should have been used in place of judicial notice for VEI's reason for Plaintiff's termination. However, the Court's analysis and outcome remain the same regardless of the terms used in the Court's notice. The point the Court was emphasizing was that VEI had admitted that it terminated Plaintiff because of performance issues, and not because he committed a criminal offense.

VEI refers to are meaningless unless they fall under the definition of "for cause" that was mutually agreed to by the parties: Plaintiff committing a criminal offense involving theft, fraud or dishonesty. No record evidence exists to that effect. Moreover, VEI admitted that Plaintiff was terminated because he failed to follow directives, took unapproved time off, purportedly interviewed with a competitor, and otherwise had performance issues. Regardless of whether the termination letter authored by Moroun indicated that Plaintiff materially breached his Employment Agreement for failing to save a large account, and further indicating that such conduct justified termination Plaintiff "for cause," this does not change the explicit language defining that term in the agreements. What is more, even if the Court were to assume that all of VEI's assertions about Plaintiff's abdication of his duties are true, there is no language in the agreements that defines termination "for cause" as Plaintiff being negligent, willfully malfeasant or disobedient in the performance of his duties as the Vice President of Sales. While the Employment Agreement does provide that Plaintiff shall devote the whole of his time, attention and ability to VEI's business interests and that he shall competently and faithfully serve VEI and use his best efforts in doing do, the Employment Agreement does not provide that Plaintiff's failure to do so constitutes grounds to terminate Plaintiff "for cause" and without compensation.

Lastly, VEI argues that Plaintiff breached his "extra-contractual" fiduciary duties such that he is not entitled to compensation under the agreements. Primarily, VEI included no breach of fiduciary duty claim against Plaintiff in its counterclaim. Further, VEI fails to cite to any contractual provision that creates a fiduciary relationship between the two and further fails to cite to any governing legal principles that would create a fiduciary relationship by operation of law.[5]

---

[5]    VEI's breach of fiduciary duties argument is also suspect as generally, "[a] breach of fiduciary duty claim is barred by the gist of the action doctrine if the fiduciary duty alleged is grounded in contractual obligations." *Alpart v. Gen. Land Partners, Inc.*, 574 F. Supp. 2d 491,

Accordingly, this argument is rejected.

### 2. Liability for Pennsylvania Wage Payment and Collection Law Claim

As stated by the Pennsylvania Supreme Court, "[t]he Wage Payment and Collection Law provides employees a statutory remedy to recover wages and other benefits that are contractually due to them." *Oberneder v. Link Computer Corp.*, 548 Pa. 201, 696 A.2d 148, 150 (1997). "To present a wage payment claim, the employee must aver a contractual entitlement to compensation from wages and a failure to pay that compensation." *Braun v. Wal-Mart Stores, Inc.*, 2011 PA Super 121, 24 A.3d 875, 954 (2011), *aff'd*, 630 Pa. 292, 106 A.3d 656 (2014). *See also Weldon v. Kraft Inc.*, 896 F.2d 793, 801 (3d Cir.1990).

"Wages" for purposes of the WPCL include "all earnings of an employee, regardless of whether determined on time, task, piece, commission or other method of calculation" and "fringe benefits or wage supplements," such as bonuses or "any other amount to be paid pursuant to an agreement to the employee...." 43 Pa. Const. Stat. Ann. § 260.2a. The WPCL further defines "fringe benefits or wage supplements" as "all monetary employer payments to provide benefits under any employee benefit plan . . . as well as **separation**, vacation, holiday or **guaranteed pay** . . . and **any other amount to be paid pursuant to an agreement to the employee**[.] . . ." 43 P.S. § 260.2a (emphasis added). Indeed, "severance pay and other separation related contractual arrangements are . . . covered by the WPCL." *Shaer v. Orthopaedic Surgeons of Cent. Pennsylvania, Ltd.*, 2007 PA Super 371, ¶ 26, 938 A.2d 457, 465 (2007) (collecting cases). *See also Giacone v. Virtual Officeware*, *LLC*, 642 F. App'x 137, 143 (3d Cir. 2016) (wages under the WPCL include any amount guaranteed to be paid under an employment agreement at

499 (E.D. Pa. 2008) (citing *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 19 (Pa.Super.Ct.2002). *See also Bohler–Uddeholm America, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79 (3d Cir.2001).

termination).

Plaintiff argues that VEI's failure to compensate him under the Employment and Retention Incentive Agreements constitutes a WPCL violation. In response, VEI relies on its arguments that it did not breach the agreements and thus no WPCL claim can stand. However, because as previously explained, VEI has breached the Employment and Retention Incentive Compensation Agreements with Plaintiff, and the amounts due are considered wages under the WPCL, the Court also finds that Plaintiff is entitled to summary judgment on his WPCL claim.

### 3. Damages, Attorneys' Fees, Costs and Prejudgment Interest

Lastly, because Plaintiff's entitlement to summary judgment on his WPCL claim allows him to seek attorneys' fees and liquidated damages, along with other costs and prejudgment interest, Plaintiff shall file a fee petition[6] and outline any costs, liquidated damages and prejudgment interest he seeks. Defendants will be provided an opportunity to respond.

The Court will schedule a hearing on the contractual damages (including liquidated damages he may be entitled to receive under the WPCL), attorneys' fees, costs and prejudgment interest. Because the parties have previously briefed the issue of damages recoverable under the agreements, they need not brief this issue, but should be expected to present arguments on the contractual damages at the hearing.

## V. CONCLUSION

---

[6] Any award of attorneys' fees is subject to a lodestar analysis and the "prevailing party bears the burden of establishing by way of satisfactory evidence, 'in addition to the attorney's own affidavits,' that the requested hourly rate meets this standard." *Bowers v. Foto-Wear, Inc.*, No. 3:CV-03-1137, 2007 WL 4086339, at *3 (M.D. Pa. Nov. 15, 2007) (quoting *Washington v. Phila. County Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996)). Moreover, Plaintiff is warned that "[w]ork on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result obtained[,]" and should not include in his fee petition any work expended for claims that were dismissed. *Hensley v. Echerhart*, 461 U.S. 424, 434-35, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

Based on the foregoing, the Court finds that Plaintiff is entitled to summary judgment on his breach of contract claims for VEI's failure to pay severance and retention compensation and on his Pennsylvania Wage Payment and Collection Law claim.  An appropriate Order follows.

DATED this 2nd day of November, 2016.

BY THE COURT:

s/Cynthia Reed Eddy
United States Magistrate Judge

cc:    all registered counsel via CM-ECF