IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| DARRELL HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | 2:14-CV-00704-CRE |
| | ) | |
| vs. | ) | |
| | ) | |
| VITRAN EXPRESS, INC., VITRAN | ) | |
| EXPRESS CANADA, INC., VITRAN | ) | |
| CORPORATION, INC., DATA | ) | |
| PROCESSING, LLC, HR-1, | ) | |
| CORPORATION, CT TRANSPORT, INC., | ) | |
| | ) | |
| Defendants, | ) | |

## MEMORANDUM OPINION[1]

CYNTHIA REED EDDY, United States Magistrate Judge.

### I.     INTRODUCTION

Presently before the court is Plaintiff Darrell Harris' petition for damages and fees.  The petition has been fully briefed and a hearing on the matter was held on January 20, 2017.  For the reasons that follow, Plaintiff's petition is granted in part and denied in part.

### II.     PROCEDRUAL POSTURE

Because the court writes primarily for the parties, only the background necessary for the disposition of the fee petition will be addressed here.  The court previously granted summary judgment in Plaintiff's favor for his breach of contract claims for Vitran Express Inc.'s ("VEI's") failure to pay severance and retention compensation and on his Pennsylvania Wage Payment and

---

[1]     All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq.*

Collection Law ("WPCL") claim pursuant to Federal Rule of Civil Procedure 56(f), after giving the parties the opportunity to brief the matter, and the matter having been so briefed, but did not make a determination as to the amount of damages to be awarded to Plaintiff under the Employment Agreement and Retention Incentive Agreement. Consistent with that decision, the court ordered the parties to brief the issue of attorneys' fees and damages applicable under the WPCL along with other costs and prejudgment interest. Each topic will be discussed separately.

III. FINDINGS OF FACT

   *a. Harris' Termination of Employment and Relevant Employment Agreement Provisions Regarding Damages*

1.      Plaintiff, Darrel Harris, was recruited by Defendant Vitran Express, Inc, ("VEI") with six other senior executives to lead a turnaround of VEI's troubled United States truck-based freight operations.

2.      Plaintiff began his employment with VEI on August 1, 2012 in the capacity of Senior Vice-President of Sales and Marketing/Pricing.

3.      On January 23, 2013, Plaintiff and VEI entered into an Executive Employment Agreement ("Employment Agreement").

4.      The Employment Agreement provided Plaintiff with an annual base salary of $250,000 which was to continue until Harris' employment with VEI otherwise ended pursuant to the terms and conditions set forth in the Employment Agreement.

5.      Paragraph 3(b)(ii) of Plaintiff's Employment Agreement would entitle Plaintiff to twelve (12) months' worth of compensation ($250,000) if his employment was termination "without case."

6.      By letter dates October 17, 2013 from Moroun to Plaintiff, Moroun terminated Plaintiff's employment.

7.     By Memorandum Opinion dated November 2, 2016, the Court held that VEI terminated Plaintiff on October 17, 2013 "without cause," as that term is defined in the Employment Agreement.

### b. Retention Compensation

8.     On June 25, 2013, VEI, Vitran Corporation Inc. and Plaintiff entered into a Retention Incentive Agreement.

9.     The Retention Incentive Agreement provides that Plaintiff is entitled to an amount of $62,500 if he remained continuously employed with VEI through December 31, 2013, and an amount of $125,000 if he remained continuously employed with VEI through April 30, 2014.

The agreement provides in pertinent part that:

(c) . . . the Executive shall remain entitled to receive the First Retention Payment and the Second Retention Payment if the Executive ceases to be an active employee of the Company or an affiliate of the Company at any time prior to the Second Retention Date [(or April 30, 2014)]: (i) on account of the Executive's termination by the Company or its applicable affiliate without "cause for termination" in which case payment of both the First Retention Payment and the Second Retention Payment, if and to the extent not then paid, shall be made by the Company or, failing payment by the Company, by Parent to the Executive within five (5) business days after the date of the Executive's termination by the Company or its applicable affiliate[.]

Retention Incentive Agreement § 1(c)(i) [ECF No. 75-1].

### c. Severance Compensation

10.     The Employment Agreement provides for two separate severance amounts: (1) if Plaintiff was terminated "without cause," he is "entitled to a lump sum amount equivalent to twelve (12) months' compensation[;]" and (2) if Plaintiff was terminated "without cause" within 365 days following a "change of control" of VEI, Plaintiff is entitled to "a lump sum amount equivalent to eighteen (18) months' compensation." Employment Agreement [ECF No. 71-5] at § 3(b)(iii), (b)(iv).

11.     While there are different definitions of "change in control" under the agreement, Plaintiff relies on Section 3(c)(B)(ii) in arguing he is entitled to eighteen months' severance compensation:

> (B) as a result of a takeover bid, merger, consolidation or other business combination, or sale of assets of the Parent, that in each case is supported by a majority of the directors of the Parent, . . . (ii) the persons who were the directors of the Parent immediately before the transaction, cease to constitute a majority of the board of directors of the Parent either directly, or indirectly, as a result of the applicable transaction[.]

*Id*. at § 3(c)(B)(ii).

12.     Section 2(a) of the Employment Agreement defines "Parent" as Vitran Corporation, Inc., a Canadian corporation.

13.     On October 7, 2013, and pursuant to the Stock Sale and Purchase Agreement, Data Processing, LLC purchased the stock of Vitran Corporation – a Nevada corporation – from Parent VEI.

14.     Mr. Moroun is the sole owner/member of Data Processing, LLC.

### d. *The Butler County Action*

15.     Prior to Plaintiff filing the present federal action, VEI filed an Action for Declaratory Relief in the Court of Common Pleas of Butler County on November 4, 2013 (the "Butler County action").

16.     On January 24, 2014, VEI served Plaintiff with its Notice of Intention to Take Default Judgment pursuant to Pa. R. Civ. P. 237.

17.     On February 14, 2014, Plaintiff filed Preliminary Objections to VEI's Action for Declaratory Relief, as well as his Request for Oral Argument on Preliminary Objections to Plaintiff's [VEI's] Complaint, and filed his brief in support on March 17, 2014.

18.     VEI filed its Answer to Harris' Preliminary Objections, and oral argument was held on the matter.

19.     The court overruled the Preliminary Objections in their entirety.

20.     The Butler County action is currently pending.

### e. *Relevant Attorneys' Fees: Plaintiff's Fee Petition*

21.     Pursuant to Plaintiff's Petition for Damages and Fees, Attorney Cafardi, Plaintiff's lead counsel, charged between $260 and $275 per hour for legal services he rendered to Plaintiff in both the Federal and Butler County actions.  He billed a total of 295.90 hours.

22.     Consulting partner William Wyrick charged between $275 and $290 per hour.  He billed a total of 10.50 hours.

23.     Several associates working with Attorney Cafardi charged rates between $225 and $250 per hour and billed a total of 146.90 hours.

24.     Attorney Cafardi's paralegal charged between $135 and $145 per hour for paralegal services and billed a total of 11.20 hours.

25.     The total hours billed for both the Federal and Butler County actions were 464.50; however, 87.50 hours were attributable to Plaintiff's unsuccessful EEOC/Title VII claims.  As a result, these 87.50 hours were deducted from the total hours billed, as described more fully in the Fee Petition.

26.     Plaintiff's fee petition seeks reimbursement for attorneys' fees and costs in the amount of $129,255.17, which represents the total fees and costs resulting from the 376.85 billable hours attributable to both the Federal and Butler County actions.

### f. *Prejudgment Interest*

27.     Plaintiff seeks prejudgment interest at the prevailing rate of 6% for a total of 37

months, as of October 18, 2013, the date of Plaintiff's termination without cause.

28. Defendants argue that Plaintiff should only be entitled to prejudgment interest for a period of 20.8 months at the prevailing rate of 6% because Plaintiff's own litigation strategy accounted for the delay in the award.

## IV. CONCLUSIONS OF LAW

### a. Attorneys' Fees

29. The WPCL states:

> The court in any action brought under this section shall, in addition to any judgment awarded to the plaintiff . . . allow costs for reasonable attorneys' fees of any nature to be paid by the defendant.

43 P.S. § 260.9a(f); *see also Oberneder v. Link Computer Corp.*, 674 A.2d 720, 722 (Pa. Super. 1996) (providing for mandatory award of attorneys' fees).

30. The United States Supreme Court has held that reasonable fee determinations are subject to the lodestar analysis, which provides that "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983).

31. "The general rule is that a reasonable hourly rate is calculated according to the prevailing market rates in the community." *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996).

32. The hourly rates set forth in Plaintiff's Fee Petition are reasonable for complex employment litigation in the Pittsburgh metropolitan area, the relevant legal community for determining the reasonableness of attorneys' fees.

33. Plaintiff is not entitled to recover an additional $20,521.54 in fees and costs incurred in the Butler County action because he has not proffered any relevant legal authority to

support such a finding. *Jones v. Muir,* 515 A.2d 855 (Pa. 1986) (The party claiming entitlement to an award of fees bears the burden of proving such entitlement).

34.　　Plaintiff has cited to no authority that a prevailing party in a federal lawsuit can be reimbursed for attorneys' fees in a separate but related state court lawsuit.

35.　　Plaintiff's reliance on *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) for this proposition is misplaced, as in that case, the Supreme Court determined whether it was appropriate to award fees and costs to a prevailing part for interrelated claims arising in a single lawsuit, despite the fact that all of the originally pled claims in that matter were not before the court for final disposition.

36.　　Accordingly, Plaintiff is not entitled to recover any of the attorneys' fees related to the Butler County action.

37.　　The court will now turn to the remainder of Plaintiff's fee petition, as the district court has the sole discretion to determine the reasonable amount of attorneys' fees under a WPCL claim. *Oberneder,* 696 A.2d at 151 n. 4 ("the [WPCL] only mandates an award of reasonable attorneys' fees. Courts retain discretion to determine the amount of fees owed.").

38.　　This court finds that it would be unreasonable to award Plaintiff reimbursement for attorneys' fees expended following this court's March 31, 2016 Memorandum Opinion and Order disposing of Defendants' motion for summary judgment. Had Plaintiff filed a cross-motion for summary judgment at the appropriate juncture, the attorneys' fees related to, *inter alia*, trial preparation, pre-trial submissions, responding to the courts' Rule 56(f) Notice, and attending mediation would not have been incurred.

39.　　Accordingly, the following amounts will be deducted from Plaintiff's award of attorneys' fees as unreasonable:

- A deduction of $1,169.13 as set forth in Invoice 0416071 dated 4/30/2016 – the amounts of $632.50 and $72.50 related to attending a Butler County action conference has previously been deducted;

- A deduction of $2,035 as set forth in Invoice 0516085 dated 5/31/2016;

- A deduction of $23,544 as set forth in Invoice 0616078 dated 6/30/2016;

- A deduction of $9,620 as set forth in Invoice 0716070 dated 7/31/2016;

- A deduction of $4,812.50 as set forth in Invoice 0816070 dated 8/31/2016;

- A deduction of $7,833.50 as set forth in Invoice 0916069 dated 9/30/2016; and

- A deduction of $3,957.50 as set forth in Invoice 1016077 dated 10/31/2016.

40.     The amount of $129,255.17 that Plaintiff seeks for reimbursement of attorneys' fees will be deducted by $20,521.54 for the Butler County action and will be deducted by $52,971.63 for unreasonable fees incurred, for a total deduction of $73,493.17.

41.     Accordingly, Plaintiff is awarded a total of $55,762 for reimbursement of attorneys' fees.

### b.  *Liquidated Damages*

42.     Section 260.10 of the WPCL states:

> Where wages remain unpaid for thirty days beyond the regularly scheduled payday . . . and no good faith contest or dispute of any wage claim including the good faith assertion of a right of set-off or counter-claim exists accounting for such non-payment, the employe shall be entitled to claim, in addition, as liquidated damages an amount equal to twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater.

43 P.S. § 260.10.

43.     A "good faith contest" must be proven by clear and convincing evidence. *Andrews v. Cross Atlantic Capital Partners, Inc.*, 158 A.3d 123, 137 (Pa. Super. 2017) (citations omitted).

44. "Good faith" is found in "any contest or dispute that is based on facts that would lead a reasonable person to find a legitimate dispute as to whether wages were due[.]" *Wieczorek v. Dempsey Partners, LLC*, 2013 WL 6578788, at *6 (E.D.Pa. 2013) (citations omitted).

45. Here, Defendants have established that they had a good faith basis for withholding his wages, as they believed that Plaintiff materially breached his contractual duties he owed to the company by his poor performance and insubordination.

46. This is further evidenced by VEI initiating a lawsuit in the Court of Common Pleas for Butler County, Pennsylvania against Plaintiff under the employment agreement one month after Plaintiff's separation from employment. *See Hartman v. Baker*, 766 A.2d 347, 354 (Pa. Super. 2000) (incorrect legal conclusions made in good faith are not grounds to award liquidated damages under the WPCL).

47. Accordingly, the court finds that Plaintiff is not entitled to liquidated damages under his WPCL claim.

### c. *Prejudgment Interest*

48. In breach-of-contract actions in Pennsylvania, prejudgment interest is allowable at the legal rate of six percent from the date payment was wrongfully withheld. *See Girard Bank v. John Hancock Mut. Life Ins. Co.*, 524 F. Supp. 884, 897 (E.D. Pa. 1981).

49. Defendant's argument that an award of prejudgment interest should be both equitable and fair is rejected, as equitable considerations for an award of prejudgment interest applies only to a claim involving unliquidated damages. *See Montgomery County v. Microvote Corp.*, 2001 WL 722485, at *5 (E.D.Pa. 2001) (collecting cases).

50. Here, the damages are liquidated, *i.e.*, "stated in the contract or ascertainable by application of a formula stated in the contract." *Id*.

51.     Accordingly, Plaintiff is awarded prejudgment interest for a total of 37 months at the prevailing legal rate of 6%.

### d. *Severance Compensation*

52.      To establish entitlement to 18 months of compensation, Harris must prove that VEI terminated his employment within one year of a "change of control" as that phrase is defined by Section 3(c)(B) of his Employment Agreement.

53.     Plaintiff's entire argument that there was a change in control entitling him to 18 months' severance compensation relies on dicta from this Court's previous decision stating that the stock of VEI's parent company, Vitran, was sold to Defendant Data through a Stock Sale and Purchase Agreement and that Matthew Maroun is the sole owner and member of Data, and Plaintiff's unsupported conclusion that this constitutes a change in control.

54.     Plaintiff has not met his burden of proof that he is entitled to 18 months of damages due to a change in control as that term is defined in the Employment Agreement, as he points to no evidence that Vitran's directors ceased to constitute a majority of the board of directors as a result of Vitran's stock being sold to Data.

55.     Data, through Matthew Maroun, did not buy any assets of Vitran Corporation, Inc., a Canadian corporation, but rather acquired Vitran Corporation, a Nevada corporation.

56.     VEI argues that Harris cannot pursue any of his claims unless he waives his right to recover severance because the Employment Agreement expressly requires Plaintiff to execute a release of all of his claims as a condition to paying him severance, and because Plaintiff never executed a release, he is not entitled to severance.

57.     VEI mischaracterizes the plain language of the Employment Agreement which reads: Plaintiff "agrees that if requested by the Company, he will execute and deliver a release in

favour [sic] of the Company and resignations from any position or office that he then holds with the Company or with any affiliate . . ." in exchange for the severance payments provided under the agreement. Employment Agreement at § 3(e).

58.      Plaintiff is not required to execute a release of his rights to severance payments to bring suit against VEI, and further there is no evidence that VEI ever requested that Plaintiff execute any such release.  Most importantly, the obligation to sign a release is conditioned upon VEI's payment of severance compensation, which was undisputedly never paid to Plaintiff.

59.      Accordingly, there is no evidence of record showing that Plaintiff is entitled to 18 months of compensation, and the court finds he is entitled only to 12 months of severance compensation for being termination "without cause," as that term has been previously defined by the court, or $250,000.

### e. Retention Compensation

60.      The Retention Incentive Agreement provides that Plaintiff is entitled to an amount of $62,500 if he remained continuously employed with VEI through December 31, 2013, and an amount of $125,000 if he remained continuously employed with VEI through April 30, 2014.

61.      As previously found, the definition of the term "without cause for termination" as used in the Retention Incentive Agreement is the same as is employed in the Employment Agreement.

62.      The Retention Incentive Agreement further provided that if Plaintiff was terminated "without cause for termination," he would be entitled to both amounts to be made payable within five days after Plaintiff's termination by either VEI or its Parent.

63.      Therefore, the plain language of the Retention Incentive Agreement entitles Plaintiff to both the $62,500 and the $125,000.00 amounts, or $187,500.

## V.     CONCLUSION

In accordance with the above Findings of Fact and Conclusions of law, an appropriate Order follows.

Dated: August 25, 2017

BY THE COURT:

s/Cynthia Reed Eddy
United States Magistrate Judge